UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO.:08-CV-397-KKC

GLADYS K. MIDDLETON                                                                                   PLAINTIFF

v.                                           **OPINION AND ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                          DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on cross motions for summary judgment filed by Plaintiff Gladys K. Middleton ("Middleton") and Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). Rec. No. 11, 12. Middleton argues that a finding of disability is supported by the evidence in the record and that the decision below must be reversed because the opinions of her treating physician Dr. Dye and the psychological opinion of Dr. Bennett were given improper weight. In response, the Commissioner asserts that the decision denying a period of disability and disability insurance benefits is supported by substantial evidence in the record. For the reasons set forth below, the Court will grant the Commissioner's motion for summary judgment.

I.      FACTUAL AND PROCEDURAL HISTORY

Middleton filed a prior application for disability insurance benefits on July 26, 2004. AR 7. Her claim was denied initially and on reconsideration. On June 28, 2006, an Administrative Law Judge ("ALJ") issued a hearing decision denying the claim. The Appeals Council of the Social Security Administration then denied review and when no further appeal was taken by Middleton, the decision became final. *Id.*

On July 7, 2006, Middleton filed the instant application for a period of disability and

disability insurance benefits alleging a period of disability beginning on December 31, 2002.[1] This claim was again denied initially and on reconsideration. An administrative hearing was then held before an ALJ on March 30, 2007. The ALJ issued an unfavorable decision on January 29, 2008 denying Middleton's application for benefits finding she is not disabled under sections 216(i) and 223(d) of the Social Security Act. AR 7-16. The Appeals Council again denied Middleton's request for review making the ALJ's hearing decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955, 404.981, 422.210(a)(2008). Because Middleton has properly exhausted all available administrative remedies, this case is now ripe for judicial review under 42 U.S.C. § 405(g).

## II. DISCUSSION

### A. Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994).

This Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

---

[1] This period of disability includes an adjudicated period, denying benefits, through the date of the ALJ's prior decision issued on June 28, 2006.

2

The Court cannot review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. App'x 503, 506 (6th Cir. 2005).

**B. Overview of the Process**

Under the Social Security Act, disability is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). The disability determination is made by an ALJ using a five step sequential evaluation process. *See* 20 C.F.R. § 416.920. The claimant has the burden of proving the existence and severity of limitations caused by her impairment and that she is precluded from doing past relevant work for the first four steps of the process. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). However, the burden shifts to the Commissioner for the fifth step. *Id.*

At the first step, the claimant must show she is not currently engaging in substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(b). At the second step, the claimant must show that she suffers from a severe impairment or a combination of impairments that are severe. *See* 20 C.F.R. § 404.1520(c). At the third step, a claimant must establish that her impairment or combination of impairments meets or medically equals a listed impairment. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404.1525; 20 C.F.R. § 404.1526.

Before considering the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 404.1520(e). The RFC analyzes an individual's ability to do physical and mental work activities on a sustained basis despite any existing mental or physical

impairments. In determining the RFC, the ALJ must consider all of the claimants impairments, including those which are not severe. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Once the ALJ has determined the claimants RFC, he must determine whether the claimant has the RFC to perform the requirements of her past relevant work. *See* 20 C.F.R. § 404.1520(f).

At the fifth step, the burden shifts to the Commissioner to establish that there is sufficient work in the national economy that the claimant can perform given her RFC, age, education and work experience. *See* 20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1512(g); 20 C.F.R. § 404.1560(c).

**C. The ALJ's Decision**

The ALJ's decision initially notes that Middleton's latest application for a period of disability and disability insurance benefits constitutes an implied request to reopen the prior decision, denying benefits which was issued on June 28, 2006. AR 7. The ALJ then indicated that based on the record before him, Middleton failed to present new or material evidence that warranted reopening the prior application for benefits.[2]

At step one of the evaluation process, the ALJ found that Middleton has not engaged in substantial gainful activity since December 31, 2002, the alleged disability onset date. AR 10. At step two, the ALJ found that Middleton suffers from the following combination of severe impairments: gastroesophophageal reflux disease (GERD); obesity; hypertension; osteoarthritis (multiple joints); history of bipolar disorder; depression; and anxiety. *Id.* In making these findings,

---

[2] In her motion for summary judgment, Middleton acknowledges that the present application constituted an implied request to reopen the prior decision. Rec. 11 at p. 2. However, Middleton's motion does not contain arguments challenging the ALJ's denial of the implied request to reopen the prior application. In general, "[a] refusal to reopen a prior application is not a final decision and may not be reviewed by the courts." *Califano v. Sanders*, 430 U.S. 99, 107-09, 51 L. Ed. 2d 192, 97 S. Ct. 980 (1977); *see Harper v. Sec'y of HHS*, 978 F.2d 260, 262-63 (6th Cir. 1992); *see also Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228 (6th Cir. 1990). However, an exception to this rule exists where "a constitutional claim is made in conjunction with a social security benefits case." *Harper*, 978 F.2d at 262-63. In this case, no constitutional claim has been raised in Middleton's motion for summary judgment. As a result, the Court will not address the ALJ's decision that reopening the prior ALJ's decision was not warranted.

the ALJ discussed Middleton's course of treatment with Dr. Gregory Dye ("Dr. Dye") whom he recognized as her treating physician.[3] *Id.*

The ALJ's opinion also addressed a consultative examination of Middleton by Dr. Barry Burchett ("Dr. Burchett") on October 11, 2006. AR 11. During this examination, Middleton apparently indicated that her disability was mainly mental. *Id.* According to Dr. Burchett's examination, Middleton had normal range of motion in the lumbar spine, negative straight leg testing and normal strength. Dr. Burchett noted slight swelling of the right middle finger and right great toe, consistent with osteoarthritis and a mild limitation in range of motion in Middleton's right shoulder and hips. His report included assessments of probable degenerative disc disease of the cervical spine and possible right carpal tunnel syndrome. He also diagnosed GERD, obesity and hypertension. The ALJ's opinion also refers to and discusses in depth a psychological consultative examination performed by Dr. Jeanne Bennett, Psy. D. ("Dr. Bennett") on November 17, 2006. *Id.*

Upon completing his review of all of the evidence in the record, the ALJ determined at step three that Middleton does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 12. With regard to Middleton's mental impairments, the ALJ found Middleton to have: (1) mild limitations with regard to restrictions of activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation. *Id.* The ALJ also noted that the "C criteria" were not met and that his findings were consistent with the overall treatment evidence including the opinions of state agency reviewing psychologists. *Id.*

---

[3] However, the ALJ noted that Dr. Dye's treatment of Middleton had been fairly conservative.

Prior to step four, the ALJ made the required RFC determination. After considering the evidence of physical and mental impairments in the record, the ALJ determined that Middleton has the RFC to:

> perform light exertional work with no more than occasional stooping, crouching, reaching with the right hand. The claimant is limited to work that requires no more than a limited but satisfactory ability to deal with coworkers and a seriously limited but not precluded ability in her ability to tolerate the stress and pressure of work activities. The claimant is able to understand, remember and carry out simple 1-2 step instructions and tasks.

*Id.* With regard to Middleton's mental limitations, the ALJ accepted many of Dr. Bennett's recommendations, but determined that her finding that Middleton had a "marked" limitation in her ability to handle the stress and pressures of work activities was not supported by the evidence in the record. AR 13. In support of his mental RFC, the ALJ noted that it was consistent with treatment records from the Cumberland River Comprehensive Care Center where Middleton received treatment and consistent with opinions of state agency reviewing psychologists. AR 14. With regard to the physical RFC determination, the ALJ gave considerable weight to the opinions of state agency reviewing physicians, which were based on the medical evidence in the record and Dr. Burchett's examination. *Id.* The ALJ discussed and considered Dr. Dye's treating source opinion that Middleton was incapable of performing even sedentary work. *Id.* While recognizing that opinions of treating physicians are ordinarily entitled to substantial deference, the ALJ found Dr. Dye's opinion inconsistent with his own treatment notes and other medical evidence in the record.[4]

At step four, the ALJ determined that Middleton is unable to perform her past relevant work.

---

[4] At this point of his opinion, the ALJ also referenced the Sixth Circuit's decision in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and the Social Security Administrations Acquiescence Ruling 98-4(6). The ALJ noted that he did not find new and material evidence of "changed circumstances" in Middleton's condition. Furthermore, the opinions of the state agency physicians were consistent with the prior ALJ's determination and with the majority of the medical evidence. However, the ALJ decided that Middleton's physical RFC should be lowered from medium work to light exertion based on her subjective complaints. Despite this finding, the ALJ determined that Middleton's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. Middleton has not appealed this credibility determination.

Her past work relevant work was as a paralegal, office clerk, secretary and credit clerk. The ALJ found that Middleton's exertional and non-exertional impairments rendered her unable to perform this past relevant work. However, at step five, the ALJ found that considering Middleton's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. AR 15. In support of this finding, the ALJ relied on testimony from a vocational expert ("VE") that given all of the aforementioned factors, an individual like Middleton would be able to perform such occupations as mail clerk (900 such jobs in Kentucky and 67,000 nationally) and office helper (1,700 such jobs in Kentucky and 133,000 nationally). *Id.* As a result, the ALJ determined that Middleton has not been under a disability as defined in the Social Security Act from December 31, 2002 through the date of his decision. AR 16.

**D. Analysis**

In this appeal, Middleton makes two arguments in support of finding her disabled. First, she claims that the ALJ erred by failing to accord greater weight to the opinion of her treating physician, Dr. Dye, who opined that she could not even perform sedentary work. Second, she claims that the ALJ erred by dismissing the opinion of Dr. Bennett who performed a consultative psychological examination. The Commissioner responds that the decision below denying benefits is supported by substantial evidence in the record.

**1. Dr. Dye's Opinion**

Middleton argues that the ALJ erred by failing to accord sufficient weight to the opinion of her treating physician and claims that if Dr. Dye's opinion had been given controlling weight, a finding of disability would have been warranted. On November 27, 2007, Dr. Dye filled out a form entitled "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)." In it, Dr. Dye opined that Middleton can only lift/carry ten pounds on an occasional or frequent basis. AR 347. He

also limited her to standing/walking for two hours and sitting for two hours during a normal eight hour workday. He also found that she would be required to lie down two to three times during a normal workday and would be required to miss four or more days of work per month because of her impairments. Essentially, his opinion was that Middleton could not even perform sedentary level work. AR 347-48. In support of these findings, Dr. Dye cited Middleton's decreased range of motion in her hands, elbows and right shoulder and problems with her knees and lumbar spine. AR 347. He also recommended that Middleton should never twist, stoop/bend, crouch, or climb ladders but could occasionally climb stairs. These findings were based on moderately severe osteoarthritis and balance difficulties. AR 348. Middleton's abilities to reach (including overhead) and push/pull were also affected and she was to avoid concentrated exposure to extreme temperatures and high humidity. *Id.*

In general, the opinions of treating physicians such as Dr. Dye are entitled to great weight and deference. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). Because treating physicians are most likely to be familiar with the medical history and impairments of a claimant, their opinions must be given controlling weight by an ALJ if they are "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(d). However, even if the opinion of a treating source is not entitled to controlling weight, the ALJ must consider certain factors - including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion. *Id.*

The ALJ's opinion indicates that he understood the treating source rule. He emphasized the

8

general rule that Dr. Dye's opinion was entitled to controlling weight as long as it was consistent with the record. However, he indicated that the limitations espoused by Dr. Dye were inconsistent with the longitudinal treatment evidence including his own treatment notes. Despite the serious ailments that Dr. Dye claims render Middleton completely unable to work, his treatment notes reflect conservative treatment for Middleton's musculoskeletal ailments. Furthermore, the record contains no significant clinical findings reported or changes in Middleton's treatment regimen. For example, a look at the medical records from 2006 indicates numerous medication refills but little aggressive treatment. While Dr. Dye noted Middleton's depression, hypertension/GERS, anxiety, osteoarthritis, fatigue and recommended weight loss, there is no evidence of clinical or diagnostic findings supporting these assessments. AR 206. Dr. Dye's records from August and October 2006 show Middleton appearing for arm pain and sinus problems. AR 218. However, both of these visits merely resulted in medications being given - including Ibuprofen - without any referrals to specialists for dealing with osteoarthritis or any of the other conditions. In a chronic problem list/history submitted by Dr. Dye, Middleton's problems are listed as GERD, depression/anxiety and hypertension. AR 274. No mention is made of her musculoskeletal complaints including osteoarthritis. The medical records submitted for 2007 by Dr. Dye are similar, Middleton gives complaints resulting in medication refills and assessments by Dr. Dye of hypertension, GERD, osteoarthritis and edema. AR 332-36. However, again there is no evidence of any diagnostic testing, the possibility of pursuing more aggressive treatment measures, or of referrals to specialists for the dealing with Middleton's issues.[5]

---

[5] In addition, the record also contains a previous opinion by Dr. Dye regarding Middleton's ability to do work-related activities which was filled out on July 12, 2007. AR 339-42. This evaluation is significantly less restrictive than the assessment submitted by Dr. Dye in November 2007, which Middleton claims supports a finding of disability. In this assessment, Dr. Dye indicated that Middleton would not need to lie down during a normal work day (unlike the 2-3 times that he claimed in November 2007). AR 340. In it, he also found that Middleton was

The other medical evidence in the record also supports the ALJ's decision to give little weight to the limitations espoused by Dr. Dye. Middleton made several visits to the Norton Community Hospital from 2001 to 2004. The most recent record from May 12, 2004 shows Middleton reporting for back pain. AR 192. However, Middleton was sent home in stable condition and a clinical impression of acute myofascial dorsal strain was given. AR 193-94. Middleton also appeared on May 04, 2002 for back pain but was again sent home in improved condition. AR 199-200. Furthermore, upon examination her extremities were noted to be non-tender and she had full range of motion, no pedal edema and relief was noted from taking medication. AR 200-202.

The ALJ also relied on Dr. Burchett's consultative examination in finding that Dr. Dye's opinions were inconsistent with the medical evidence. Dr. Burchett's examination noted Middleton's subjective complaints of arthritis, neck pain, shoulder pain and knee pain. AR 219. However, during the course of the examination Middleton acknowledged that she had never had x-rays or an MRI of her neck. She also acknowledged that she had never had her back x-rayed or imaged. *Id.* While Middleton claimed that several x-rays had revealed arthritis, she has never seen an orthopedist for this condition and there is no evidence that Dr. Dye ever referred her to one. AR 219-20. Dr. Burchett also observed that Middleton ambulates with a normal gait, does not require the use of assistive devices to get around, is stable at station and comfortable in the sitting and supine positions. These findings are contrary to Dr. Dye's sitting/standing and walking restrictions. Upon examination, Middleton's upper extremities were found non-tender and there were no signs of redness, warmth, swelling or nodules. AR 221. Despite having problems with her right middle finger, Middleton was able to write and pick up coins without difficulty and had normal range of

---

capable of sitting without changing position and was required to walk around much less often than his subsequent findings in November 2007. While neither Middleton or the Commissioner have referenced this previous assessment in their motions, the Court has nonetheless considered this previous assessment.

motion.

Dr. Burchett also examined Middleton's lower extremities and found no evidence of tenderness, redness, warmth, swelling, fluid, laxity or crepitus of the knees or ankles. AR 222. He did however note that Middleton's right great toe had slight edema and mild tenderness. These findings are inconsistent with Dr. Dye's walking and standing restrictions. Upon examining Middleton's spine, Dr. Burchett noted that there was no tenderness over the spinuous process and no evidence of paravertebral muscle spasms. Examination of the dorsolumbar spine revealed normal curvature and no evidence of paravertebral muscle spasms. Dr. Burchett concluded his opinion by stating that Middleton "has some mild limitations of motion of the right shoulder and right hip. She has limitations of squatting because of bilateral knee pain." AR 223. These minor restrictions are much less severe than those given by Dr. Dye.

Finally, the opinions of state agency medical consultants also support the ALJ's decision to reject Dr. Dye's opinion. AR 263-70, 314-21. The ALJ was clearly required to consider these opinions. *See* 20 C.F.R. § 404.1527(f)(2)(explaining that because "State agency medical...consultants...are highly qualified physicians...who are also experts in Social Security disability evaluation....administrative law judges must consider [their] findings...as opinion evidence.").

Based on this Court's review of the ALJ's decision and the evidence contained in the record, it appears that the ALJ properly rejected Dr. Dye's opinion that Middleton cannot perform even sedentary work. Furthermore, sufficient justifications were given by the ALJ in support of the decision to reject Dr. Dye's opinion so that the procedural requirements of *Wilson* have been satisfied. *See Wilson*, 378 F.3d at 544-45 (explaining that good reasons must be given for not giving weight to a treating physician in the context of a disability determination).

**2. Dr. Bennett's Psychological Opinion**

Middleton's second argument is that the ALJ erroneously dismissed Dr. Bennett's opinion and only accepted those portions of her report supporting a decision denying benefits. The record indicates that Bennett performed a consultative examination of Middleton on November 17, 2006. AR 236-42. The opinions of consulting physician are not entitled to the same level of deference as the opinions of treating physicians. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). That being said, the opinion of a consulting physician may not be disregarded simply because it is favorable to a claimant. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983).

In assessing Middleton's functional capacities, Dr. Bennett made several findings. First, she indicated that Middleton's ability to understand, remember, and carry out instructions towards the performance of simple repetitive tasks is not affected by the impairment. AR 241. This is consistent with the ALJ's mental RFC finding that Middleton is able to understand, remember and carry out simple 1-2 step instructions and tasks. AR 12. Second, she indicated that Middleton's ability to tolerate the stress and pressure of day-to-day employment has "marked" limitations. Discussion of this finding will be deferred because this is where the opinions of Dr. Bennett and the ALJ diverge. Third, Dr. Bennett opined that Middleton's ability to sustain attention and concentration is affected with moderate limitations noted. AR 241. The ALJ also concluded that Middleton's ability to maintain concentration, persistence, or pace is moderately limited. AR 12. Finally, Dr. Bennett opined that Middleton's capacity to respond appropriately to supervision, coworkers, and work pressures in a work setting is subject to slight limitations. AR 241. Once again, the ALJ made a similar finding, determining that Middleton has a limited but satisfactory ability to deal with coworkers and a seriously limited but not precluded ability to tolerate the stress and pressure of work activities. AR 12.

The question therefore is whether the ALJ erred by rejecting Dr. Bennett's opinion that Middleton has "marked" limitations in her ability to tolerate the stress and pressure of day to day employment. Middleton claims that this limitation was dismissed without adequate justification and that the ALJ substituted his own lay opinions for those of a qualified psychological examiner. The Court disagrees with Middleton on both points. First, the ALJ gave clear reasons for rejecting Dr. Bennett's opinion regarding Middleton's ability to handle the stress and pressures of work, noting that this limitation was not supported by the evidence in the record. In addition, the ALJ noted that his mental RFC was consistent with Middleton's treatment records from Cumberland River Comprehensive Care Center ("CRCCC") and the opinions of state agency reviewing psychologists. Thus it is clear that the ALJ gave an adequate justification for rejecting portions of Dr. Bennett's opinion. The only question remaining is whether the proffered justification finds ample support in the record.

Treatment records from CRCCC show that Middleton was diagnosed with bipolar disorder/NOS. AR 277. However, in response to Middleton's's acknowledgment in January of 2006 that she had been drinking four bottles of wine per day for the past few months, she was advised to go to a detox program. AR 282. However, she expressed the belief that she did not need to attend a detox program and could handle the problem at home. Middleton also reported additional symptoms which included sad moods, sleep problems, crying spells and fatigue. None of the CRCCC records express the view that Middleton is unable to work, rather they reflect a patient who was receiving treatment with medication and whose condition was stable.

The record also includes RFC assessments completed by Dr. Jan Jacobson and Dr. Stephen Scher in December 2005 and February 2007. AR 259-62, 296-99. Dr. Jacobson reviewed the evidence in the record and found Middleton moderately limited in her ability to interact

13

appropriately with the general public and ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. AR 260. These findings are consistent with the ALJ's mental RFC. Dr. Scher also reviewed the medical evidence and made the similar findings which were subsequently used by the ALJ in Middleton's mental RFC. AR 12, 260, 298. Because the opinions of the state agency reviewing physicians were based on the medical evidence they provide substantial evidence in support of the ALJ's mental RFC determination. Furthermore, because there was substantial evidence in the record contradicting certain of Dr. Bennett's findings, the ALJ did not err by rejecting certain parts of her report and adopting others. Similarly there is no basis for Middleton's claim that the ALJ substituted his lay opinion for those of Dr. Bennett.

### III.     CONCLUSION

For the reasons set forth above, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the Court HEREBY ORDERS that:

(1)   Plaintiff's Motion for Summary Judgment (Rec. No. 11) is **DENIED;**

(2)   Defendant's Motion for Summary Judgment (Rec. No. 12) is **GRANTED;** and

(3)   The administrative decision of the Commissioner will be **AFFIRMED** by a separate judgment entered this date.

This 25th day of January, 2010.

Signed By:
*Karen K. Caldwell*  KKC
**United States District Judge**